## WILLIAM V. LAMBE

*v.*

## WILLIAM J. MANNING.

*Opinion filed February 14, 1898.*

1. DEEDS—*contents of paper attached to deed are not necessarily a part of deed.* Courts cannot import into a deed the contents of a paper attached thereto but not referred to in the deed, in the absence of testimony tending to show that the paper was executed contemporaneously with the deed and was intended to be part thereof.

2. EVIDENCE—*what not a violation of rule that parol proof is inadmissible to contradict written instrument.* Where a written instrument attached to a deed bears no date and is not referred to in the deed or the acknowledgment thereto, parol proof is admissible to show when the paper was executed, when and by whom it was attached to the deed, and why it was so attached.

3. SAME—*when statement by grantor as to why a written permit was attached to deed is admissible.* Where one claiming a perpetual easement in the right to take gravel from adjoining land offers as part of his chain of title a deed to which a written permit to take such gravel is attached, a declaration made by the grantor to the scrivener at the time the permit was written, that the permission was personal to the grantee and that he would not put it in the deed, which had already been executed, is admissible as *res gestæ*, being a verbal act explanatory of the grantor's motive.

4. LICENSES—*when permit attached to deed operates as a license.* A written permit attached to a deed for mill property, whereby the grantee is given the privilege of taking gravel from the grantor's adjoining land to repair the mill-dam, creates no interest in the grantee other than that of licensee, in the absence of anything showing an intention to make the permit a part of the deed.

5. SAME—*a license is not assignable and is revocable at the will of the licensor.* A license to enter upon the land of another is revocable at the will of the licensor, is not assignable, is inoperative if the owner of the land conveys the land to another, and is revoked by the death of either the licensor or licensee.

6. SAME—*a permissive use cannot be made the basis of a claim of adverse interest.* Acquiescence by a land owner in the taking of gravel from his land by the grantees of his grantee will not convert a personal license for that purpose to his grantee into an easement by prescription, where it does not appear that such taking was under a claim of right to take under the license.

7. SAME—*effect of expenditure of money on faith that license will not be revoked.* The expenditure of money by a licensee on the faith that

the license will not be revoked does not make such license irrevocable, in the absence of any agreement that the license should continue for a definite period, or of any act by the licensor which would work estoppel or operate as a fraud upon the licensee.

APPEAL from the Circuit Court of DuPage county; the Hon. C. W. UPTON, Judge, presiding.

BROWN & SNYDER, and HENRY M. COBURN, for appellant:

Parol evidence is inadmissible to vary, enlarge, modify or contradict a written contract, by showing what was said in reference to it before or at the time of its execution. *Insurance Co.* v. *Webster*, 69 Ill. 392; *Abraham* v. *Pomeroy*, 13 id. 133; *Hutton* v. *Arnett*, 51 id. 198.

Parol evidence is inadmissible to show that the parties intended that their interests should be different than as expressed in the writing. The writing must speak for itself. *Taft* v. *Schwamb*, 80 Ill. 289.

Where there is no ambiguity in the deed, the intention of the grantor and of the parties can only be ascertained by reference to the deed itself. 2 Devlin on Deeds, chap. 25, secs. 836-838; *Palmer* v. *Cook*, 159 Ill. 300.

Where two instruments are executed as parts of the same transaction and agreement, whether at the same or different times, they will be taken and construed together. *Stacey* v. *Randall*, 17 Ill. 467.

Where a contract is executed which refers to and makes the conditions of another instrument a part of it, the two will be construed together as the agreement of the parties. *Insurance Co.* v. *Favorite*, 46 Ill. 263; *Duncan* v. *Charles*, 4 Scam. 561; *Bailey* v. *Cromwell*, 3 id. 71.

A written license, like an unexecuted parol license, is revocable at the will of the party giving it. (*Kimball* v. *Custer*, 73 Ill. 389.) But where it has been executed and enjoyed, and the revocation of it would be a fraud upon the licensee, the licensor cannot, in equity, revoke it. 3 Kent's Com. 452; *Forbes* v. *Balenseifer*, 74 Ill. 183.

Where an easement has become appurtenant to a dominant estate, a conveyance of the estate carries with it the easement belonging to it, whether mentioned in the deed or not. *Tinker* v. *Forbes*, 136 Ill. 221; 2 Washburn on Real Prop. 317.

The right of receiving or discharging water over land, the right of receiving air, light or heat from over other lands; the right of taking wood, minerals or other produce of the soil; of pasturage and of fishing; the right to draw water from a spring—all are incidents or appurtenants which pass as easements. 3 Ellis, B. & E. 655.

Whenever a thing is granted, all and every easement necessary to its beneficial enjoyment will pass. *Morrison* v. *King*, 62 Ill. 30; *Alexander* v. *Tolleston Club*, 110 id. 65.

It is not necessary that the easement claimed by the grantee must be really necessary for the enjoyment of the estate granted. It is sufficient if it is highly convenient and beneficial therefor. *Cihak* v. *Klekr*, 117 Ill. 643.

BOTSFORD & WAYNE, and CHARLES S. CUTTING, for appellee:

A written contract giving a party an exclusive right to dig ore, gravel or mineral in lands, no estate or interest in the land being granted, is a license, and not a grant or demise. *Iron Co.* v. *Wright*, 32 N. J. Eq. 248.

When the license is coupled with an interest in the land, or is of such a character that the interest could not pass by parol, then a writing is essential to the creation of the interest. *Woodward* v. *Seely*, 11 Ill. 157.

In construing deeds and other writings courts must seek to ascertain and give effect to the intention of the parties, and for that purpose they may take notice of attendant circumstances, and by them determine the intention of the parties. *Hadden* v. *Shoutz*, 15 Ill. 582.

Covenants are to be construed according to the intention of the parties and the good sense of the case. *Davis* v. *Wiley*, 3 Scam. 243.

A license is a bare authority to do a certain act or series of acts upon another's land without possessing any estate therein, and, being founded in personal confidence, it is not assignable, and is gone if the owner of the land who gives the license transfers his title to another or if either party dies.  Angell on Waters, (5th ed.) sec. 285.

No easement or permanent right in land can be acquired by parol agreement, and any grant or contract whereby any right in land is given must be by deed. Hurd's Stat. 1895, chap. 59, sec. 2; *Tanner* v. *Volentine*, 75 Ill. 624; *Woodward* v. *Seely,* 11 id. 157; *Simpson* v. *Wright*, 21 Ill. App. 67; *Murray* v. *Gibson,* id. 488; *Deyo* v. *Ferris*, 22 id. 154; *Stock Yards* v. *Ferry Co.* 112 Ill. 384; *Forbes* v. *Balenseifer*, 74 id. 183.

The expenditure of money in the faith that a license will not be revoked will not create an interest in the land in favor of the licensee.  *Stock Yards* v. *Ferry Co.* 112 Ill. 384; *Tanner* v. *Volentine*, 75 id. 624; *Dwight* v. *Hayes*, 150 id. 273; *Forbes* v. *Balenseifer*, 74 id. 183; *Stoddard* v. *Filgur*, 21 Ill. App. 560; *Mumford* v. *Whitney*, 16 Wend. 380; *Dodge* v. *McClintock*, 47 N. H. 386; *Houston* v. *Laflel*, 46 id. 505; *Cook* v. *Stearns*, 11 Mass. 533; *Iron Co.* v. *Wright*, 32 N. J. Eq. 248; *Prince* v. *Case*, 2 Am. L. C. (5th ed.) 557; *Helfield* v. *Railroad Co.* 5 Dutch, 221.

Even when the license is under seal the licensor may revoke it at will.  2 H. & W. Am. Lead. Cas. 549; *Iron Co.* v. *Wright*, 32 N. J. Eq. 248; *Wood* v. *Leadbitter*, 13 M. & W. 845.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery, filed by the appellant, in which it was alleged the appellant was entitled to obtain gravel from a gravel pit on the lands of the appellee, for the maintenance of a certain mill-dam, and also to obtain water, conducted by means of a certain pipe to the mill of appellant, from a certain spring situate on the premises of the appellee, and averring that the appellee has ob-

structed the way or road leading to the gravel pit, locked
the gate thereto, and threatens to further obstruct and
prevent the appellant from taking or using such gravel,
and threatens to move and disconnect the said pipe and
thereby prevent appellant from using the water from the
said spring, etc.   The prayer of the bill was that the
appellee should be enjoined from interfering with or pre-
venting the appellant from obtaining the said water and
gravel.   A preliminary injunction was issued by the mas-
ter in chancery.

The answer of the appellee, in substance, denied that
appellant had any right of access to the said gravel pit or
to take the gravel therefrom, and also denied that appel-
lant was entitled to use water from said spring by said
pipe or by any other means.   Appellee also, by leave of
the court, filed a cross-bill, the prayer of which was that
it might be adjudged and decreed by the court, upon a
hearing, that the appellant had no right to the use of the
water from the said spring and no right to get gravel
from the said gravel pit, and that he might be perpetu-
ally enjoined and restrained from exercising, or attempt-
ing to exercise, either of such privileges.

The testimony was produced before and heard by the
court, and a decree entered finding that the evidence
failed to support the allegations of the appellant's bill,
and that the allegations of the answer of the appellee
and his cross-bill were sustained by the proof, and adjudg-
ing and decreeing the original bill should be dismissed at
the cost of the appellant, and that appellant should be
perpetually enjoined from asserting, or endeavoring to
exercise, any right of access to the said gravel pit or to
the use of the said water from the said spring.   This is
an appeal to bring the decree into review in this court.

The facts disclosed by the proof are, that the tract
or parcel of land on which the said gravel pit is located
was, on the 30th day of November, 1847, the property of
one Julius M. Warren, and is now owned by the appellee

by *mesne* conveyances from the said Warren; that on the said 30th day of November, 1847, the said Julius M. Warren sold to Warren Smith, Franklin Smith and Alva Fowler a certain other tract or parcel of land by him owned, on which were located a saw-mill and a mill-dam, the latter erected for the purpose of collecting the water flowing in a tributary of the DuPage river, for the purpose of operating said mill,—which last mentioned tract adjoined the other tract, upon which the gravel pit was located; that said Warren executed to the said Smiths and Fowler a deed, duly acknowledged, for the mill property, which also contained a grant of the right and "privilege of flowing to high-water mark on both sides of the river, as far as Julius M. Warren now owns." The deed was executed on a printed form, and when the same was presented to the recorder for record there was attached to the foot of said printed form, by means of wafers, part of another sheet of paper, on which appeared the following writing:

"Also said party of the second part is to have access to the above described premises by a two-rod road lying east from a line running south from the place of beginning, and one of the same dimensions running down the river on the west side, between low and high-water mark, down to the north line of the town of Warrenville, aforesaid. Also the privilege of getting gravel out of the usual place of getting gravel, for the dam, for the benefit of the dam and mills.     J. M. WARREN. [L.S.]

"Signed, sealed and delivered in presence of Geo. W. Waite."

The said Warren Smith and Franklin Smith, and the said Alva Fowler, to whom said Julius M. Warren conveyed said mill tract, sold and conveyed an undivided two-thirds thereof to one Lloyd Stearns and the remaining one-third thereof to Daniel Ball, but made no reference in either of the deeds to the right to take gravel from the gravel pit, but on the back of each of said deeds is found a statement in writing, signed by said grantors, as follows: "Also the privilege of getting gravel out of the

usual place of getting gravel, for the dam and mills, as far as the right of doing so is invested in us." Said Ball and Stearns conveyed their interest in the property by deeds which contained no reference whatever to the right of taking gravel from the other tract. Appellant traces his title by *mesne* conveyances from these grantees. The other deeds in his chain of title contain in each of them a clause to the effect the grantors convey all such rights as they may have to take gravel, except the deed to appellant, which was executed to him by his father, and which purports to convey a permanent right and continued easement of taking gravel.

Appellant contends the writing upon the sheet so attached to the deed should be deemed and considered a part of the deed and should "be read into the body thereof," or, as the proof shows that the signature to the said writing so attached to the deed is the genuine signature of the grantor, Julius M. Warren, the effect of the said writing was to create an easement in favor of the grantees in the said deed, and of their heirs and assigns, to go upon the premises where the said gravel pit is located and take gravel therefrom perpetually, so long as it was needed for the maintenance of said dam. The view of the appellee is, the writing in question is a mere license or privilege granted to the grantees in the deed to take the gravel, and that it was revocable at the pleasure of the said Warren, and that the grantees in the said deed, Smiths and Fowler, took no right which they could assign or pass to another.

The conveyance of the title to real estate by deed is regarded as a most solemn and important act,—so much so, that the mode and manner thereof are established and regulated by statutes enacted expressly for that purpose. The deed in question is a full and complete instrument without the paper writing attached thereto, and there is nothing in the deed referring in any way to such paper. Courts are entirely without power to import into the deed

the contents of the paper, simply because it is attached to it. The appellant produced no testimony tending to show the paper was executed at the time of the execution of the deed, or was intended to be a part thereof. The appellee, however, introduced as a witness the subscribing witness to the signature of the maker of the paper. His testimony, in substance, was, that he was the scrivener who prepared the deed signed and acknowledged by the said Warren, and that some two or three weeks later he was requested to step into the business house of Warren Smith, one of the grantees in that deed, and that the grantor, Julius M. Warren, and the grantees Warren Smith and Alva Fowler, were in the said business house, and that said Julius M. Warren told him he wanted him (the witness) to write a permit allowing said grantees to take gravel from a certain pit, to be used on the milldam; that Warren directed him to write the permit on a separate piece of paper and to attach the paper to the deed, and said to him, "I don't want it to go in the deed because it is a personal matter between me and these men, and I don't know that I want it to go to their heirs or assigns," and that he, (the witness,) in pursuance of such directions, procured a separate piece of paper and wrote the permit thereon and the said Warren signed it, and he (the witness) attached it, by means of wafers, to the deed. There was no countervailing testimony on the point. It therefore appeared the paper was not executed as a part of the deed, but was written and signed several weeks after the execution, acknowledgment and delivery of the deed.

If this testimony is accepted, it is clear the permit to take gravel is not a part of the grant. But it is urged the testimony was not competent. The ground of this objection is the general rule of evidence, parol proof is inadmissible to contradict a written contract, or to show that the parties to a written contract or instrument intended that the interests which were affected by the

writing should be different than those expressed in the writing. The instrument bore no date. It was therefore competent to show by parol proof when it was executed. It was not referred to in the deed or the acknowledgment thereof, and it was therefore proper the court should know when and by whom it was attached to the deed and why it was attached. Such facts in no degree tended to con-tradict any written statement. It was proper to prove the grantor refused to execute a new deed, or bind himself in any way with regard to the right to take the gravel ex-cept by the writing. The witness testified to a statement made by Warren, to the effect that he was not willing to make a new deed or to put the permit in the deed that he had executed, and he intended the privilege to take gravel should extend only to the grantees in that deed, and that he did not consent the privilege should be made to extend to their heirs or assigns. We think this evi-dence was competent.

The court had in evidence a deed, to which was at-tached a paper writing not appearing, so far anything in the deed tended to show, to be properly a part of the deed, and yet relied upon as conferring rights as a part thereof. As we said before, it was important to know when, how, by whom and for what purpose the writing was attached to the deed. It was, of course, proper to show who was present and what was done at the time the paper was attached to the deed, but it is urged it was improper to admit the statement of the grantor, Warren, as to the reason why he directed the paper to be fastened to the deed. The declarations were made at the time of the transaction. They accompanied an act of Warren, were explanatory of his motives and intentions in doing the act, and are to be regarded as a "verbal act," or as a part of what he did, and were properly received in evi-dence. *Rigg* v. *Cook,* 4 Gilm. 336; *Croff* v. *Ballinger,* 18 Ill. 200; *Hurd* v. *Haggerty,* 24 id. 172; *Rowley* v. *Hughes,* 40 id. 316; *Richerson* v. *Sternburg,* 65 id. 272; 1 Greenleaf on Evi-

dence, sec. 108; Starkie on Evidence, p. 446, note 1; Chamberlaine's Best on Evidence, p. 446.

It appears clearly from this testimony that it was not the intention of Warren, the grantor, to incorporate the written privilege into the deed so as to make it a part of the grant, but that, upon the contrary, he only intended the writing to operate as a personal license to the grantees in the deed. There is nothing in the writing, considered apart from the deed, inconsistent with this intention, and the evidence showed it should be considered as part of the deed. The instrument created no estate in the land, but simply a bare authority to the persons named as grantees in the deed, to enter upon the land and take gravel to be used in repairing the dam, without which it would have been unlawful for them to enter upon the lands of the grantor and take gravel therefrom. Such a privilege is known in the law as a license, and is revocable at the pleasure of the party making it. It is not assignable, and is inoperative if the owner of the land conveys the land to another, and is revoked by the death of either the licensor or the licensee. (*Woodward* v. *Seely*, 11 Ill. 157; *Forbes* v. *Balenseifer*, 74 id. 183; *National Stock Yards* v. *Wiggins Ferry Co.* 112 id. 384; 13 Am. & Eng. Ency. of Law, pp. 545-554; Edwards on Easements, p. 93.) It further appeared that the said grantor, Warren, departed this life some two years before the institution of the suit, and that the title to the land had been sold under a decree of a court of chancery in a proceeding instituted by his heirs for partition of the lands of which he died seized. The license expired on the death of Warren; and in addition to that, the appellee, the present owner of said title, had expressly revoked it before the bill in this cause was filed.

It is urged it appeared from the testimony the said Warren, during his lifetime, on different occasions during a period of twenty years, permitted the grantees of his grantees to the mill property to take gravel from the

said gravel pit, for use in maintaining the dam. It did not appear, however, that such taking was under a claim of right to take under the license in question. This, if true, would not convert a mere license into a grant of an interest in the land or operate to make the license irrevocable, nor would such taking of gravel, unless it appeared the taking was under claim of right to take under the original license, tend to support the claim that the license had been converted, by prescription, into an easement. A mere permissive use cannot be the basis of a claim of an adverse interest. (*Forbes* v. *Balenseifer, supra; City of Quincy* v. *Jones,* 76 Ill. 231; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 id. 561; *Dexter* v. *Tree,* 117 id. 532; 9 Am. & Eng. Ency. of Law, p. 367.) Moreover, while the evidence upon the point was not free from conflict, it was sufficient to support the chancellor in the conclusion the right to take gravel had not been exercised for a period of nearly eighteen years before the filing of the bill.

The circuit court ruled correctly in holding that appellant had no right or authority to enter upon the lands of the appellee and take gravel therefrom.

The alleged right of the appellant to obtain water by means of the pipe leading to a spring upon the lands of the appellee rests upon a verbal agreement or arrangement made between prior owners of the spring tract and the mill tract. It appears that said former owners united in defraying the expense of putting in a wooden pipe to conduct water from the spring to a public watering-trough or tank located in the public highway, for the use of the public, and that the mill was located between the spring and the public tank or trough, and that it was the understanding water might be taken from the pipe for use in the mill, and that afterward the public trough or tank was abandoned and the water used only at the mill, and only for that purpose when the water was low in the mill-pond. The right to take the water, not having been

created by any grant or any writing, did not constitute an interest in the land. It was a mere license, revocable, as we have hereinbefore seen, at the pleasure of the owner of the land, and becoming inoperative upon the death of the party who gave it. Those who owned the lands when the license was granted are shown to be dead, and it was proven,—indeed, it is the complaint of the bill in the case,—the appellee, the present owner of the land, has by express acts and declarations revoked the license.

But it is urged the license to take both the gravel and the water has been executed and enjoyed, and that the grantee of the license expended money in preparing pipes to convey the water, and that the revocation would be a fraud upon the licensee, and for that reason the licensor and his grantees should be deemed estopped, in equity, from revoking it. The expenditure of money in piping the water was but insignificant in amount, and it was shown the licensor contributed an equal amount. But it seems to be settled in this State that the expenditure of money on the faith a mere license will not be revoked, will not operate to create an interest in the land in favor of the licensee. (*National Stock Yards* v. *Wiggins Ferry Co. supra.*) The purpose of the expenditure in the case at bar was to procure water for the use of the public, and secondarily for the use of the mill. There was no agreement that the license as to the gravel or the water should continue for any period of time. No compensation was paid the owner of the land for the privilege, and nothing done or said which would mislead the licensee to believe or suppose the right might not be revoked at any time. No irrevocable right was created in the spring, the gravel bed, or the tracts of land on which they are respectively located. The rule that licenses are revocable was properly applied by the chancellor to the case. *National Stock Yards* v. *Wiggins Ferry Co. supra.*

The decree must be and is affirmed.

*Decree affirmed.*